# IN THE OREGON TAX COURT

## NORTHWEST TEXTBOOK DEPOSITORY CO.
*v.*
## DEPARTMENT OF REVENUE
(TC 2805)

Milo E. Ormseth, Stoel, Rives, Boley, Jones & Grey, Portland, represented plaintiff.

Decision for plaintiff rendered September 14, 1989.

## CARL N. BYERS, Judge.

Plaintiff appeals from the assessment of additional corporate excise taxes for the years 1982 and 1983. The parties stipulated to most of the facts. The remaining facts were elicited at a brief trial. The prime question is one of statutory interpretation.

*Background Information*

Plaintiff is an Oregon corporation[1] engaged in the textbook depository business. By way of background information, states adopt or approve specific textbooks for use in their schools. Some states, Oregon being one, require the publishers of approved textbooks to maintain at least one depository in the state.[2] This assures the schools of a ready supply of approved texts. Plaintiff contracts with the various publishers of textbooks to act as a depository. Plaintiff agrees to receive the textbooks on consignment. The publishers retain title to the textbooks and bear the risk of loss while in transit or storage. Plaintiff pays for the textbooks after they are sold. Textbooks not sold are returned to the publishers or destroyed at the publishers' cost.

The State of Washington ("Washington") does not require a depository. Although Washington approves certain texts for its schools and sets the prices which can be paid for those textbooks, it relies upon the publishers to assure a supply. Plaintiff distributes or sells books in Washington. Plaintiff may deliver those books from its depository in Oregon or, during peak times, set up a temporary warehouse in Washington.

Oregon imposes a corporate excise tax measured by the corporation's net income. If a corporation does business in

---

[1] It appears that during the years in question plaintiff was a wholly owned subsidiary of a Washington holding corporation and part of a unitary operation with another Oregon corporation. This, however, is not relevant to the issue before the court.

[2] ORS 337.090 provides for the state to enter into a contract with the publishers to the end of regulating the prices that can be charged and requiring a depository to assure a ready supply of the textbooks.

more than one state, the income is apportioned to the states where earned. Oregon has adopted the Uniform Division of Income for Tax Purposes Act (UDITPA). ORS 314.605 to 314.670. Under that Act, the income is apportioned by a three-factor formula composed of payroll, property and sales. "Sales" is used in the broad sense of gross receipts from the conduct of the business. ORS 314.610(7). Within that factor, the statute distinguishes sales of tangible personal property from all other sales. ORS 314.665 provides:

"(1) The sales factor is a fraction, the numerator of which is the total sales of the taxpayer in this state during the tax period, and the denominator of which is the total sales of the taxpayer everywhere during the tax period.

"(2) Sales of tangible personal property are in this state if:

"(a) The property is delivered or shipped to a purchaser, other than the United States Government, within this state regardless of the f.o.b. point or other conditions of the sale; or

"(b) The property is shipped from an office, store, warehouse, factory, or other place of storage in this state and (A) the purchaser is the United States Government or (B) the taxpayer is not taxable in the state of the purchaser.

"(3) Sales, other than sales of tangible personal property, are in this state if (a) the income-producing activity is performed in this state; or (b) the income-producing activity is performed both in and outside this state and a greater proportion of the income-producing activity is performed in this state than in any other state, based on costs of performance."

The issue is whether the sale of tangible personal property by a consignee is a sale of tangible personal property under ORS 314.665(2).

*Facts*

The parties have stipulated to the following facts:

"1

"Plaintiff engaged in substantial promotional and customer service activities within and outside Oregon in connection with the distribution of textbooks. Such activities included the following:

"(a) Plaintiff's employees visited school district offices and schools (hereafter collectively called "schools") in Oregon

and Washington. They also attended conferences and conventions in both such states at which educators were present and textbooks were displayed and discussed. Such employees personally delivered plaintiff's catalogs to schools and gathered and distributed information about current and forthcoming textbooks adoptions. Such employees helped schools to prepare orders to obtain books. Such employees had and exercised the authority to accept orders in plaintiff's behalf while present at the schools.

"(b)    Such employees performed services at the schools in addition to soliciting orders. Such services included occasionally delivering books, frequently picking up books being returned, replacing defective books, and resolving other customer complaints and problems.

"(c)    Such employees assisted plaintiff in collecting delinquent accounts in both Washington and Oregon.

"(d)    Plaintiff filled most orders from the stock of books maintained in plaintiff's warehouse in Oregon. However, plaintiff sorted, stored and delivered a portion of the orders received from schools in the Seattle, Washington area through a warehouse in Seattle that plaintiff rented and operated during the summer delivery seasons. Plaintiff also sorted, stored and delivered a portion of the orders received from schools in the Spokane, Washington area through a warehouse in Spokane that was rented by plaintiff's parent corporation, Seeley Graham Co. In 1982 and 1983, approximately 13.5 percent and 16.4 percent, respectively, of plaintiff's total deliveries to schools in Washington were handled through the Seattle and Spokane facilities.

"2

"Most of the services described in paragraph 1 above were performed by employees who were residents of Oregon and whose base of operations was in Oregon. Such employees performed services both within and without Oregon. Such employees were directed and controlled by plaintiff from its headquarters within Oregon, and they left Oregon from time to time on a temporary basis in order to perform the services described above. The compensation paid to such employees was treated as compensation paid in Oregon for purposes of OAR 150-314.660(2)."

The evidence at the trial established that plaintiff billed Washington schools at delivered prices, which increased plaintiff's profit. Plaintiff competes with publishers who have representatives in Washington. The representatives are free

to try to persuade the schools to use their publisher's text. Plaintiff cannot. Plaintiff represents several publishers and must maintain strict neutrality between publishers. Plaintiff can try to persuade schools to order their textbooks from it rather than directly from the publishers. Since prices are set by the state, there can be no competition between plaintiff and the publishers on the prices charged for textbooks. However, plaintiff can compete with the publishers on freight charges. Other advantages that plaintiff has over the publishers are: (1) plaintiff provides on-site help in preparing the order, (2) delivery from plaintiff's depository allows faster delivery time, and (3) plaintiff can provide local service for defective books, order errors and similar problems.

Plaintiff must collect the sales proceeds from the schools. Plaintiff then pays the publishers for the books sold, less plaintiff's commission. In this arrangement, plaintiff bears the risk of bad debts. This is not a major item since most of plaintiff's customers are public schools. Plaintiff pays the publishers on a quarterly basis. As a result, plaintiff may pay for the textbooks before it has collected from the schools. The earned commissions are plaintiff's only source of income. If plaintiff does not sell books, it receives no income. It receives no compensation for storing, packaging, labeling or handling textbooks.

*Issue*

The differing views of the parties clearly delineates the issue in this case. Plaintiff maintains that its activities in Washington constitute the "sale of tangible personal property." Plaintiff claims the right to apportion a part of its income to Washington, thereby reducing its corporate excise tax. Defendant contends that plaintiff cannot "sell" the textbooks because it does not own them. In defendant's eyes, plaintiff renders services to the publishers for which plaintiff receives commissions. Income for services is apportioned on the basis of where those services are performed.[3] Plaintiff

---

[3] The statute provides that if services are performed "both in and outside this state and a greater proportion of the income-producing activity is performed in this state than in any other state, based on costs of performance," all of the income is attributable to Oregon. ORS 314.665(3).

concedes that if its activities are not the sale of tangible personal property, then all of its income is taxable in Oregon. This is because most of its activities took place in Oregon.

## UDITPA

This is a question of first impression under UDITPA. Counsel has been unable to find any case authority dealing with the issue of consignment sales. The history of the uniform legislation gives no particular guidance. In resolving this issue, the court has looked to laws such as the Uniform Commercial Code (UCC) and constitutional limitations on the state's power to tax as well as the language of the statute itself.

■ ■ What we must focus on is the nature of plaintiff's *business activity* in Washington. ORS 314.615. This is to be distinguished from the legal consequences flowing from that activity. Such an approach seems consistent with UDITPA. For example, ORS 314.665(2)(a) allocates sales to this state if the property is delivered or shipped to a purchaser in this state "regardless of the f.o.b. point *or other conditions of the sale.*" (Emphasis added.) Also, ORS 314.665(2)(b) allocates sales to this state if property is shipped from this state to another state and the taxpayer is not taxable in the other state.

## UCC

■ The UCC treats a consignment sale as a "sale or return." ORS 72.3260(3). Under a "sale or return," title passes to the purchaser at delivery. The purchaser can return the goods even though they conform to the contract. In contrast, under a true consignment, title does not pass between the parties. By treating a consignment as a "sale or return," the UCC deems title to have passed to the consignee as to any third party. That is, the consignee's creditors may claim the goods for debts owing. ORS 72.3260. *See* 1 Bailey, Oregon Uniform Commercial Code 164-65 (1982). Sale of the goods by the consignee passes title from the consignor to the purchaser. (ORS 72.4030(3).)

In summary, a consignment is recognized by the UCC only between the parties. As to all third persons, it is deemed a sale. ORS 314.665(2)(a) allocates a sale to this state when the property is delivered or shipped to a purchaser here regardless of the "conditions of the sale." That same rule, applied to

property delivered or shipped to Washington, should allocate sales to that state regardless of the conditions of the sale.

*Public Law 86-272*

■        In an attempt to bring some order to the states competing for the income of interstate businesses, Congress enacted Pub L 86-272, § 101, 15 USC § 381 (1982). Intended as a stopgap and temporary measure[4] it imposed the limitation that:

> "No State, or political subdivision thereof, shall have power to impose, for any taxable year ending after September 14, 1959, act, a net income tax on the income derived within such State by any person from interstate commerce if the only business activities within such State by or on behalf of such person during such taxable year are either, or both, of the following:
>
> "(1)   the solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the state[.]" Pub L 86-272, § 101.

This provision protects drummers, but not peddlers. Drummers only solicit orders which are filled outside the state and delivered directly to the purchaser. Peddlers bringing their wares into the state are subject to taxation.

The apportionment rules of UDITPA are consistent with Pub L 86-272. Income is apportioned to another state only if the business activity subjects it to taxation in that state. Specifically, ORS 314.665(2)(b) apportions income to Oregon if property is shipped from this state to another state and the taxpayer is not taxable in the other state. If the taxpayer is subject to taxation in the other state, then income

---

[4] The Senate Committee report on Senate Bill 2524, later passed as Public Law 86-272 states:

> "Your committee recognizes that the bill it has reported is not a permanent solution to the problem that exists. It was not intended to be. Your committee, like the Select Committee on Small Business of the U.S. Senate, recognizes that the problem is a complex one which requires extensive and exhaustive study in arriving at a permanent solution fair alike to the States and to the Nation. Your committee believes, however, that the bill it has reported will serve as an effective stopgap or temporary solution while further studies are made of the problem." S Rep No. 658, 86th Cong, 1st Sess (1959).

attributable to that sale of tangible personal property is apportioned to the other state.

Since plaintiff sets up a warehouse for delivery of textbooks in Washington, there can be no question that plaintiff's activities are subject to tax in that state. This does not bear on the issue of whether plaintiff's activities constitute the sale of tangible personal property. However, it does affirm that if plaintiff's activities do qualify as sales of tangible personal property, its income must be apportioned to Washington.

*Three-Factor Formula*

The court has also examined the history of the three-factor formula. The rationale for that formula was discussed in the *Second Preliminary Report Of The Committee On Tax Situs And Allocation,* a committee of the National Tax Association (NTA), Proceedings of the Forty-Third National Conference on Taxation, at 349 (1950). The report finds, on page 355, that sales of tangible personal property are "within the state" if shipped or delivered to a purchaser from an office, warehouse, factory or other place of storage located within the state.[5] The body of the report also made this statement:

---

[5]   "3. Sales.—

"(a) In the case of merchandising, mining, manufacturing, and farming, 'within the state sales' shall include:

"(1) All sales of tangible personal property delivered to purchasers within the state if shipped or delivered from an office, store, warehouse, factory, or other place of storage located within the state;

"(2) All sales of tangible personal property delivered to purchasers within the state even though transported from a point outside the state if both of the following conditions are present:

"(i) If the taxpayer is regularly engaged through its own employees in the solicitation or promotion of sales within the state and

"(ii) The sale is directly or indirectly the result of the taxpayer's activities within the state in soliciting or promoting sales;

"(3) All sales of tangible personal property shipped from an office, store, warehouse, factory, or other place of storage within the state to purchasers in other states or countries if

"(i) The taxpayer is not, through its own employees, regularly engaged in the solicitation or promotion of sales in such other states or countries, or

"(ii) Even if it is so engaged, if the sales are not directly or indirectly attributable to such activities.

"In the application of the foregoing provisions, a carrier shall be considered the agent of the seller, regardless of the f.o.b. point or other conditions of the sale." Proceedings of the Forty-Third National Conference on Taxation, *Second Preliminary Report Of The Committee On Tax Situs And Allocation,* at 355 (1950).

> "It also includes cases where the taxpayer may not otherwise
> be engaged in business within the state but maintains stocks
> of goods there on consignment for sale through brokers, inde-
> pendent contractors, or distributors." (*Id.,* at 356.)

This language is consistent with the notion that sales should
be allocated to the states which have jurisdiction to tax under
Pub L 86-272. It does not reflect a concern with where title to
the property passes. To the contrary, the report of the com-
mittee states:

> "Allocation of sales according to the state where it is
> deemed as a matter of law that title passes to the buyer is hit
> or miss.
>
> "The rule that sales should be allocated to the state of
> destination or to the state where possession of the goods is
> physically delivered to the purchaser (common carriers being
> considered agents of the seller for this purpose) comes the
> closest to conforming with the purpose underlying the use of
> the sales factor." (*Id.,* at 355-56.)

We are not concerned in this case with allocation of
the publishers' income. Our concern is with the allocation of
the consignee's income. The fact that publishers may be able
to apportion some of their income to Oregon says nothing
about whether plaintiff's income may be apportioned to
Washington. Plaintiff is a separate business. Plaintiff is not a
part of a unitary business with the publishers. It would also be
error to place too much reliance upon the history of the three-
factor formula. The rationale for allocating a manufacturer's
income is not particularly applicable where the goods are dis-
tributed through a series of wholesale operations or multi-
level marketing organizations. In our modern world, goods
manufactured by a single manufacturer may be sold under
several different labels or brand names. In this respect, the
three-factor formula may be a fruitful tree which has out-
grown its roots.

## FINDINGS

The court finds that sales of consigned tangible per-
sonal property must be apportioned under ORS 314.665(2)(b).
In making this finding, the court is focusing on the business
activity of the taxpayer. What the purchaser pays for is tangi-
ble personal property, not services. What plaintiff collects is
the purchase price of tangible personal property, not services.

It is no different than if plaintiff owned two retail book stores, one in Oregon and one in Washington. In such a case, the sale of books to Washington residents out of the Washington store would be the sale of tangible personal property. That is the activity giving rise to the income. Whether the book stock was owned in fee or on consignment is irrelevant to the nature of the activity giving rise to the income.

Plaintiff is a separate entity from the publishers and independently subject to tax in both Oregon and Washington. Plaintiff is subject to Washington's jurisdiction to tax whether plaintiff has title to the textbooks or not. By storing and delivering tangible personal property in Washington, plaintiff became subject to that state's jurisdiction to tax. The Washington purchasers are obligated to pay plaintiff. If they do not pay, plaintiff suffers the loss. This relationship correlates with the UCC which treats the transaction as a sale.

■ In summary, if a consignee sells tangible personal property and is an independent taxable entity (not part of a unitary operation), then the income from such sales is apportionable under ORS 314.665(2)(b). Defendant's Opinion and Order No. 85-3097 will be set aside and judgment will be entered in favor of plaintiff.

Costs to neither party.