Jerry W. AKINS,
*Appellant,*

*v.*

BUCYRUS-ERIE COMPANY,
*Respondent,*

*and*

McDOUGAL BROS., INC.,
*Defendant.*

(16-90-05043; CA A70260)

837 P2d 981

George W. Kelly, Eugene, argued the cause for appellant. With him on the briefs was Clinton D. Simpson, Eugene.

William G. Wheatley, Eugene, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

ROSSMAN, J.

## ROSSMAN, J.

In this product liability action, the trial court granted a summary judgment, ORCP 47B, to Bucyrus-Erie Company (defendant) on the ground that plaintiff's claim arose after the expiration of the eight-year period of ultimate repose. ORS 30.905. Plaintiff appeals, and we reverse.

As the moving party, defendant must show that there are no genuine issues of fact and that it is entitled to judgment as a matter of law. We view the evidence in the light most favorable to plaintiff. ORCP 47C; *Moore v. Mutual of Enumclaw Ins. Co.*, 113 Or App 574, 577, 833 P2d 1310 (1992).

In late 1980, Westate Tractor Company (Westate), a distributor, ordered a model 325-HL log loading machine from defendant for the stated purpose of loaning it to a potential buyer for a demonstration period. Defendant's sales representative stated in a deposition that Westate intended to sell the machine to a user. The machine was delivered to Westate on or about February 2, 1981. It is that transfer that is the focus of plaintiff's appeal.

In the spring of 1981, Westate loaned the machine to Crown-Zellerbach Company (Crown) for a demonstration period of three to four weeks. Correspondence from defendant to Westate's sales manager during that time requested the manager to forward to the eventual "owner of the machine at the time of machine delivery" a certificate indicating "extensive Hydraulic Systems tests [performed] before shipment from our manufacturing facility." Although the record shows that Crown had been considering a purchase of five to seven 325-HL machines, there is no evidence in the record to show whether the particular machine involved in this case would be a part of that purchase. At the end of the trial period, however, Crown chose not to buy it or any other 325-HL machine.

In 1982, defendant approved a transfer of the machine from Westate to a second distributor, Clyde Equipment (Clyde). The record is unclear regarding the nature of the transfer. A bill of lading prepared by defendant indicates that the machine would "be moved to Clyde Equipment *on Consignment*," but it also is entitled "SUBJECT: Buy-Back"

of the 325-HL machine. Correspondence between the parties refers to Clyde as a "selling distributor" and requests that Clyde deliver certain "Quality Checklist Cards" to the eventual "owner of this new Bucyrus-Erie [defendant's] machine."

In July, 1982, defendant prepared a "New Machine Delivery Report" naming Clyde as the distributor and Mayr Bros. Logging Company (Mayr Bros.) as the buyer. The machine was eventually sold to McDougal Bros., Inc.,[1] the owner at the time of plaintiff's injury. Plaintiff was injured on August 25, 1989, in a logging accident involving the machine. He brought this action on June 7, 1990, alleging that the machine was defective in design.

Defendant argues that plaintiff's action was untimely under ORS 30.905, which provides:

"(1)   Notwithstanding ORS 12.115 or 12.140 and except as provided in subsection (2) of this section and ORS 30.907, a product liability civil action shall be commenced *not later than eight years after* the date on which the product was *first purchased for use or consumption.*

"(2)   Except as provided in ORS 30.907, a product liability civil action shall be commenced not later than two years after the date on which the death, injury or damage complained of occurs." (Emphasis supplied.)

Under that statute, a plaintiff must have been injured within the eight-year period and must have commenced the action within two years after that injury. *See Border v. Indian Head Industries, Inc.*, 101 Or App 556, 560-61, 792 P2d 111, *rev den* 310 Or 475 (1990).

The parties do not dispute that this action was commenced within two years after plaintiff's injury. However, the question on appeal is whether there is a genuine issue of fact that plaintiff's injury occurred within eight years after the "first purchase" of the machine "for use or consumption." Plaintiff argues that the 1981 transfer of the machine from defendant to Westate was a "consignment" and that the limitation period did not begin to run until the machine was sold to Mayr Bros. in 1982. Defendant responds that the 1981

---

[1] McDougal Brothers, Inc., originally a defendant in this case, is the owner of the log loader, but is not a party on appeal.

transfer was the first "purchase" of the machine for "use and consumption," so plaintiff's August 25, 1989, injury did not arise within the statutory period.

Because plaintiff's injury occurred on August 25, 1989, if there is any evidence from which a jury could conclude that the parties intended the first purchase of the machine for use and consumption was *after* August 25, 1981, then summary judgment was improper. We hold that there is evidence to create that factual dispute.

Defendant concedes that, although there is evidence that the machine had been "used" by potential buyers during the demonstration periods, there are documents that refer to the machine as "new" when it was sold to Mayr Bros. in 1982. The record also contains documents from which a jury could infer that defendant and the distributors had an understanding that the machine would be loaned, or consigned, to *potential* buyers during the time that the distributors held the machine and that certain documents should be forwarded only to the eventual "owner." A jury could conclude that the facts do not reflect any "purchase" of the machine until a potential buyer — Mayr Bros. — became an actual owner.

Defendant also argues that, during the demonstration period in 1981, Crown never intended to purchase this particular machine, so it must have already been owned by Westate. Although defendant's argument is that Westate purchased the machine for its own use as a demonstrator, and that it never intended to sell it to a potential buyer, there is evidence to the contrary. Accordingly, defendant has failed to show that there is no issue of fact regarding whether Westate was merely a distributor that was still seeking a potential buyer in 1981. The subsequent transfer of the machine to a second distributor, Clyde, could also lead to the conclusion that, until the machine was sold to Mayr Bros. in 1982, it was owned by defendant and merely held in the hands of distributors seeking a potential buyer.

Defendant also contends that it is irrelevant whether the transfer to Westate was for the purposes of consignment only, because a consignment is considered a "sale or return" under the Uniform Commercial Code (UCC), ORS 72.3260(1), (3) and ORS 72.3270(2)(a), which is the same as a

"purchase" within the meaning of ORS 30.905. However, the UCC provisions cited by defendant refer only to the status of goods in the hands of a consignee—the party holding the goods for sale—for purposes of claims of the consignee's creditors. ORS 72.3260(3). Although the UCC deems title to pass to the consignee during the time that the consignee holds the goods for sale, so that its creditors may claim the goods for debts, a *sale* of the goods to a third party passes title directly from the consignor to the purchaser. ORS 72.4030(3); *see Northwest Textbook Depository v. Dept. of Rev.*, 11 OTR 280, 285 (1989). However, there is an exception when the consignee is generally known by its creditors to be engaged primarily in the business of selling the goods of others, such as a distributor or a dealer. ORS 72.3260(3)(b). The consignee—or the distributor in this case—merely holds the goods for sale, and the consignor—or manufacturer—is the title holder for purposes of a sale to a third party. Accordingly, defendant's argument does not resolve the factual question of whether the defendant and Westate intended that the distributor be a purchaser of the machine or merely hold it on consignment for resale to a third party.

■     In any event, even if the consignment transaction could be interpreted as a "purchase" within the meaning of ORS 30.905, there is an issue of fact regarding whether the transfer to Westate was "for use or consumption." As a distributor, Westate never used the machine for its intended purpose (loading) and a jury could infer from the evidence that defendant merely placed it in Westate's hands for the purpose of finding a potential buyer, so that use and consumption was not contemplated until the sale to Mayr Bros. in 1982.

We agree with plaintiff that there is an issue of fact regarding whether the machine had been purchased by anyone before August 25, 1981. Accordingly, the trial court erred in granting summary judgment for defendant.

Reversed and remanded.